IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                                  *
GAMAAL ROBINSON, et al.,
                                  *
     Plaintiffs,
                                  *
     v.                                CIVIL NO.: WDQ-09-1603
                                  *
EMPIRE EQUITY GROUP, INC.
d/b/a 1st METROPOLITAN            *
MORTGAGE,
                                  *
     Defendant.
                                  *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

Gamaal Robinson, Sean Reynolds and Lawrence Silver sued Empire Equity Group, Inc. d/b/a 1st Metropolitan Mortgage ("1st Metro") for violating the Fair Labor Standards Act of 1938[1] ("FLSA") and Maryland wage and hour laws.  Pending is the Plaintiffs' motion for conditional certification and court-supervised notice to potential collective action members under 29 U.S.C. § 216(b).  Also pending is 1st Metro's motion to strike affidavits submitted with the Plaintiffs' reply memorandum.  For the following reasons, the Plaintiffs' motion will be granted, and 1st Metro's motion will be granted in part and denied in part.

---

[1] 29 U.S.C. § 201 et seq.

I.    Background

1st Metro is a mortgage broker based in Charlotte, North Carolina.  Compl. ¶ 11; Daniel Jacobs Aff. ¶ 3, 5, Aug. 20, 2009. It has operated 261 branches in 29 states and the District of Columbia, Jacobs Aff. ¶ 6; it now operates 73 branches in 20 states.  *Id.* ¶ 7.  The branches provide brokerage services for home purchases, second mortgages, home equity loans, and loan refinancing.  *Id.* ¶ 4.

The Plaintiffs are former loan officers[2] who worked at 1st Metro's Rockville, Maryland branch during the past three years. *Id.* ¶¶ 15, 19, 22.  Loan officers advise borrowers about lenders and loans, match borrowers with lenders, and negotiate loans. *Id.* ¶¶ 4, 8; Pl's Mot. for. Notice, Ex. B.  They collect and analyze customer financial information[3], evaluate and recommend loans[4], and market 1st Metro's services through networking and in-person solicitation.[5]

Loan officers are paid by commission when they close loans; some loan officers also receive minimum wage, overtime, and

---

[2] Silver also worked as an Operations Manager. Compl. ¶ 3.

[3] Matthew H. Gray Aff. ¶ 26, Aug. 14, 2009.

[4] James Kimball Aff. ¶ 20, Aug. 20, 2009.

[5] William Gerald Mackey Decl. ¶ 7, Aug. 20, 2009; William Deavers, Jr. Aff. ¶ 16, Aug. 20, 2009.

bonuses.[6]

On June 18, 2009, the Plaintiffs sued 1st Metro.  Paper No. 1.  The complaint alleged that the Plaintiffs were nonexempt employees and were routinely "encouraged, permitted, and required" to work over 40 hours per week without overtime pay in violation of 29 U.S.C. § 207(a)(1).  Compl. ¶ 16, 17, 32, 36, 37. It also alleged that 1st Metro failed to pay the Plaintiffs the minimum wage in violation of 29 U.S.C. § 206(a)(1).  *Id.* ¶ 33.

The complaint is a nationwide "collective action" under § 16(b) of the FLSA, 29 U.S.C. § 216(b), and a class action under Maryland law.  Since the complaint was filed, 10 current and former 1st Metro employees from around the country have filed "consents" to join the § 16(b) collective action.[7]  They allege

---

[6] Lawrence Silver Aff. ¶ 4, July 1, 2009; Sean Reynolds Aff. ¶ 6, July 2, 2009; Gamaal Robinson Aff. ¶ 6, June 26, 2009.
    1st Metro submitted the affidavits of nine current and former branch managers from across the country.  Eight stated that loan officers were paid by commission only.  *See* Timothy M. Alston Aff. ¶ 12, Aug. 20, 2009; Deavers Aff. ¶ 31; Gray Aff. ¶ 29; Kimball Aff. ¶ 5; Mackey Decl. ¶ 12; Harry L. Newell, Jr. ¶ 24, Aug. 19, 2009; Van Ristovski Aff. ¶ 13, Aug. 17, 2009; Mark John Voss Aff. ¶ 38, Aug. 20, 2009.  Matthew Wise, who was a branch manager in Charlotte, North Carolina, stated that loan officers at his branch sometimes received bonuses in addition to their commissions.  Matthew Wise Aff. ¶ 27, 28, Aug. 20, 2009. Wise also stated that some loan officers who handled only refinancings ("Refi Direct Loan Officers") were paid minimum wage, commissions, and overtime.  *Id.* ¶ 10.

[7] They are Jeremiah E. Ellis of Bristol, Rhode Island; Jamie T. Gould of Deerfield, Illinois; Luiz Gonzaga of Rockville, Maryland; Neil Kantor of Rockville, Maryland; Robert Spies of Rockville, Maryland; Clay Grossman of Tampa, Florida; Fernando R. Smith of Sandy Spring, Maryland; James E. Thompson of Rockville,

that 1st Metro failed to pay them overtime and/or minimum wage in violation of the FLSA during the past three years.

On July 14, 2009, the Plaintiffs requested conditional certification of the collective action and court-supervised notification of potential collective action members.  Paper No. 7.  On October 9, 2009, 1st Metro moved to strike affidavits filed with the Plaintiffs' reply memorandum.  Paper No. 30.

II.  Analysis

   A.   Collective Actions under § 16(b) of the FLSA

   Under § 16(b), employees may maintain a "collective action"[8] against their employer for violations of the FLSA.  29 U.S.C. § 216(b) (2006).[9]  Section 16(b) "established an 'opt-in' scheme,

---

Maryland; Keith Berkson of Buffalo Grove, Illinois; and David N. Puerini of Fiskeville, Rhode Island.

[8] An FLSA collective action differs from a class action under Fed. R. Civ. P. 23.  Collective action plaintiffs must "opt-in" to the suit; class action plaintiffs become members of the class unless they "opt out."  *See Marroquin v. Canales*, 236 F.R.D. 257, 259 (D. Md. 2006).  Collective action plaintiffs are not bound by Rule 23's requirements of numerosity, commonality, typicality and adequacy; they need only demonstrate that they are "similarly situated" to proceed as a class.  *Mancia v. Mayflower Textile Servs. Co.*, No. CCB-08-273, 2008 WL 4735344, at *2 (D. Md. Oct. 14, 2008).

[9] Under 29 U.S.C. § 216(b):

> An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

whereby potential plaintiffs must . . . notify the court of their intention[] to be a party." *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 771 (D. Md. 2008).  Courts have discretion to allow collective actions and to facilitate notice to potential plaintiffs by ordering the employer to produce names and addresses of employees who may have been subjected to the allegedly unlawful practice.  *See id.* (*citing Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

The Court determines whether collective treatment is warranted in two stages.  The Plaintiffs must first make a "preliminary factual showing," usually by pleadings and affidavits, "that a similarly situated group of potential plaintiffs exists."  *Id.* 772-773; *Yeibyo v. E-Park of DC, Inc.*, No. DKC 2007-1919, 2008 WL 182502, at *7 (D. Md. Jan. 18, 2008). Because there is minimal evidence at this stage, the "determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a represent-ative class."  *Yeibyo*, 2008 WL 182502, at *7.[10]

Plaintiffs are "similarly situated" when they "raise a similar legal issue as to coverage, exemption, or nonpayment o[f]

---

[10] Courts permit so-called "conditional certification" and notice early in the case because the statute of limitations continues to run on unnamed class members' claims until they consent to join the collective action. *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008).

minimum wages or overtime arising from . . . similar . . . job requirements and pay provisions."[11]  The class members' positions "need not be identical, only similar." *Yeibyo*, 2008 WL 182502, at *7.

At the conditional certification or "notice" stage, the court does not make a conclusive determination that a class of similarly situated plaintiffs exists; it merely determines whether the plaintiffs have made a "modest factual showing" of similar situation that justifies notifying potential plaintiffs of the suit.  *See D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995); *see also Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 562 (E.D. Va. 2006).  "After discovery is complete and more factual information is available to the court, the defendant may file a motion to decertify the class." *Yeibyo*, 2008 WL 182502, at *7.  Then "the court uses a higher standard" to determine whether the members of the class are similarly situated.  *Id*.

The Plaintiffs contend that conditional certification is appropriate for a nationwide class of similarly situated loan officers.  They ask that the Court allow them to be notified of the suit and order 1st Metro to produce the names and last-known

---

[11] *Montoya v. S.C.C.P.P. Painting Contractors, Inc.*, No. CCB-07-455, 2008 WL 554114, at *2 (D. Md. Feb. 26, 2008)(*quoting De Luna-Guerrero v. N.C. Growers' Ass'n, Inc.*, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004)); *see also Houston*, 591 F. Supp. 2d at 831.

addresses of loan officers who worked at 1st Metro during the past three years.[12]  1st Metro counters that conditional certification is inappropriate because (1) the Plaintiffs' evidence does not establish that potential collective action members are similarly situated, (2) the Plaintiffs have not established that they were nonexempt under the FLSA, (3) and class treatment is inappropriate because fact-intensive inquiries will be required to determine the exempt status of each loan officer.[13]

1.    Motion to Strike

1st Metro argues that the affidavits of two opt-in plaintiffs--Jamie Gould, who managed an Illinois 1st Metro branch, and Jeremiah S. Ellis, who worked in Rhode Island--that were attached to the Plaintiffs' reply memorandum should be stricken because they were untimely, lack foundation, and contain hearsay.

Under Fed. R. Civ. P. 6(c)(2), "[a]ny affidavit supporting a

---

[12] The statute of limitations for FLSA claims is two years; if the plaintiffs can prove willful violations, it is three years.  29 U.S.C. § 255(a), 256(b) (2006).

[13] 1st Mortgage also contends that the motion should be denied because the Plaintiffs have not shown that others wish to opt into the suit.  Although other circuits have required such evidence, *see, e.g., Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164-65 (D. Minn. 2007), district courts in the Fourth Circuit have declined to adopt "this relatively stringent [requirement]." *See Purdham v. Fairfax County Pub. Schs.*, 629 F. Supp. 2d 544, 548-49; *Mancia*, 2008 WL 4735344, at *3 n.5.

motion must be served with the motion." This rule does not preclude affidavits supporting a reply brief when they respond to evidence supporting an opposition brief.[14] The Gould and Ellis affidavits were in response to 1st Metro's argument that the Plaintiffs had not shown a nationwide class because the motion for conditional certification was supported only by affidavits from former Maryland employees. The Gould and Ellis affidavits show similarly situated plaintiffs from other 1st Metro branches and were timely.

1st Metro also argues that statements in the Gould and Ellis affidavits should be stricken because they are hearsay[15] and lack foundation. Judges deciding motions for conditional certification in this district have considered hearsay in supporting affidavits.[16] This is appropriate given the "modest factual

---

[14] *See Kaiser-Flores v. Lowe's Home Ctrs., Inc.*, No. 5:08-CV45-V, 2009 WL 762198, at *8 (W.D.N.C. Mar. 19, 2009) (citing *McGinnis v. Se. Anesthesia Assocs.*, 161 F.R.D. 41 (W.D.N.C. 1995); *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 476-77 (6th Cir. 2002).

[15] Plaintiffs argue that the challenged statements are not hearsay under Fed. R. Evid. 803.

[16] *See, e.g.*, *Mancia*, 2008 WL 4735344, at *3 (considering allegations in affidavit that a "supervisor told [the affiant] that the policy [of the employer] was not to pay overtime" and that "other workers . . . told them they did not receive overtime"); *Montoya*, 2008 WL 554114, at *2 (finding evidence of company-wide policy when plaintiff's declarations stated that "supervisors told [the affiant] it was the [employer's] policy not to pay overtime wages"); *Marroquin v. Canales*, 236 F.R.D. 257, 260 (D. Md. 2006) (plaintiff's averment that "one group of workers told him that they had [worked] for three weeks and had not been paid" was adequate evidence of FLSA violation).

support" required at this stage.[17]  Accordingly, hearsay will be
considered.

Affidavits "submitted at the notice stage must be based on
the personal knowledge of the affiant."[18]  *White*, 236 F.R.D. at
369.  Otherwise, "affidavits submitted would not be any more
probative than the bare allegations in the complaint, and the
requirement of factual support would be superfluous."  *Id*.
Statements in the Gould and Ellis affidavits that are not based
on their knowledge will not be considered.

1st Metro argues that Gould's statements about compensation
and loan officer hours in other branches should be stricken
because Gould does not establish how he learned of these
practices. Gould was a branch manager for 12 years; when his
branch closed, he was 1st Metro's longest tenured manager.  Gould
does not claim a comprehensive understanding of how other
branches were run.[19]  He merely claims knowledge about practices

---

[17] *See White v. MPW Indus. Servs., Inc*., 236 F.R.D. 363, 367-69
(W.D. Tenn. 2006) (considering hearsay statements on motion for
conditional certification; at notice stage, plaintiffs need not
present evidence in a form admissible at trial); *Howard vs.
Securitas Security Servs*., No. 08-C-2746, 2009 WL 140126, at *3
(N.D. Ill. Jan. 20, 2009) (same).

18 "[T]hat affidavits in support of motions for conditional
certification need not meet *all* evidentiary standards for
admissibility at trial does not mean that such affidavits need
not meet *any* standards."  *White*, 236 F.R.D. at 369.
[19] Gould stated that he "was familiar with . . . the structure of
how loan officers were compensated at other branches," that he

at some other branches.  His statements about company-wide policies and practices at other branches are based on his knowledge.

Gould's statement that "[p]ayroll for the branches was . . . conducted at corporate," Gould Aff. ¶ 11, provides the basis for his opinion that corporate personnel knew loan officers were not salaried.  *See* Fed. R. Evid. 701.

1st Metro also contends that statements in the Ellis affidavit are not based on his knowledge.  Ellis "routinely spoke to loan officers in other branches" and learned that they were compensated only by commission and often worked more than 40 hours per week.  Ellis Aff. ¶ 3, 4.  This hearsay information is within his knowledge and will be considered.  Ellis has provided no basis for his broader claim of knowledge of the "typical" experiences of "most . . . 1st Metropolitan[] loan officers." *Id*. ¶¶ 5, 6.  Accordingly, the second sentence of ¶ 5 and ¶ 6 will not be considered.

2.   Motion for Notice Under § 16(b)

Persons are "similarly situated" when they "raise a similar legal issue as to coverage, exemption, or nonpayment o[f] minimum wages or overtime arising from . . . similar . . . job require-

---

knew "most (if not all) loan officers were paid commission only," and that "it was not uncommon for loan officers to work more than 40 hours a week." Gould Aff. ¶¶ 5, 7.  This was "the standard and nearly uniform way in which business was conducted at all 1st Metropolitan Mortgage branches during the 12 years I was branch manager."  *Id*. ¶ 12.

ments and pay provisions."[20]  The Plaintiffs have made the required modest factual showing for conditional certification.

The complaint alleges that 1st Metro failed to pay loan officers overtime and minimum wage, and this failure affected officers across the country.  The nine opt-in plaintiffs, who worked in five different states, also allege violations of the FLSA's minimum wage and overtime provisions.  It is alleged that loan officers were misclassified as exempt from the FLSA.

These claims appear to arise from similar job requirements and pay provisions across the country.  "Plaintiffs do not have to show that the potential class members have identical positions for conditional certification; plaintiffs can be similarly situated even though there are distinctions in their job titles, functions, or pay."[21]  1st Metro attempts to illustrate the dissimilarities of the proposed class through the affidavits of Empire Equity's president Daniel Jacobs and nine branch managers.[22]

---

[20] *Montoya v. S.C.C.P.P. Painting Contractors, Inc.*, No. CCB-07-455, 2008 WL 554114, at *2 (D. Md. Feb. 26, 2008)(*quoting DeLuna-Guerrero v. N.C. Growers' Ass'n, Inc.*, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004)).

[21] *Jirak v. Abbot Labs, Inc.*, 566 F. Supp. 2d 845, 848-49 (E.D.N.Y. 2008); *see also Perry v. Nat'l City Mtg.*, No. 05-891, 2007 WL 1810472, at *3-4 (S.D. Ill. June 21, 2007) (conditionally certifying class of 5,500 loan originators despite defendant's argument that job duties depended on their classification because loan originators had same "overall mission").

[22] The affiants managed branches in Hoboken, New Jersey;

1st Metro has summarized the affidavits describing loan officer duties.  *See* Def.'s Opp. 5-6, Section III.A.  This summary and the Plaintiffs' job descriptions from branches in Albuquerque, New Mexico; Ashville, North Carolina; Laytonsville, Maryland; and Ashburn, Virginia, Pl.'s Mot. for Notice, Ex. B., establish that loan officers' essential duties appear to be the same.

Loan officers' essential duties include advising borrowers about lenders and loans, matching borrowers with lenders, and negotiating loans.  Jacobs Aff. ¶¶ 4, 8; Pl's Mot. for. Notice, Ex. B.  This work requires collecting and analyzing customer financial information[23], evaluating and recommending loan products[24], and marketing 1st Metro's services through networking and in-person solicitation.[25]  Although these tasks may be performed differently, the Plaintiffs have made a sufficient preliminary showing that the potential class members have similar duties.

There is a greater similarity in how 1st Metro's loan officers are paid.  Eight of the nine branch manager affidavits

---

Frederick, Maryland; Charlotte, North Carolina; Raleigh, North Carolina; San Jose, California; Anaheim, California; Overland Park, Kansas; and Merrillville, Indiana.

[23] Gray Aff. ¶ 26; Alston Aff. ¶ 17.

[24] Kimball Aff. ¶ 20; Voss Aff. ¶ 35.

[25] Mackey Decl. ¶ 7; Deavers, Jr. Aff. ¶ 16; Wise Aff. ¶ 18.

12

state that loan officers were paid by commission only.[26]  All the
Plaintiffs' affidavits state this.[27]  Although branches may pay
different commissions, *see* Def.'s Opp. 17-18, the basic pay
method--commissions--is similar.

Because the potential class members have similar wage and
overtime claims, job duties, and pay, they are similarly situated
for conditional certification.

3.   The Plaintiffs' Exempt Status

1st Metro argues that conditional certification is
unwarranted because the Plaintiffs have not presented evidence
that they are protected by the FLSA.  It also argues that a
collective suit is inappropriate because the individualized
inquiries into each loan officer's exempt status will render the
action unmanageable.

FLSA exemption is an affirmative defense on which the
defendant bears the burden of proof.  *Corning Glass Works v.
Brennan*, 417 U.S. 188, 196-97 (1974).  As 1st Metro notes,

---

[26] *See* Alston Aff. ¶ 12; Deavers Aff. ¶ 31; Gray Aff. ¶ 29;
Kimball Aff. ¶ 5; Mackey Decl. ¶ 12; Newell, Jr. ¶ 24,; Ristovski
Aff. ¶ 13; Voss Aff. ¶ 38. Wise stated that loan officers at his
branch sometimes received bonuses in addition to their
commissions, Wise Aff. ¶ 27, 28, and that a subset of loan
officers who handled only refinancings ("Refi Direct Loan
Officers") were paid minimum wage, commissions, and overtime.
*Id.* ¶ 10.

[27] Reynolds Aff. ¶ 6; Robinson Aff. ¶ 6; Silver Aff. ¶ 4; Ellis
Aff. ¶ 3; Gould Aff. ¶ 6.

determining whether an exemption applies requires a fact-
intensive analysis.  Because discovery is incomplete, the record
is too limited for this analysis.  Thus, individual class members
and their exemptions may be raised by 1st Metro's motion to
decertify the class.  *See Choimbol v. Fairfield Resorts, Inc.*,
475 F. Supp. 2d 557, 563 (E.D. Va. 2006).[28]  1st Metro's arguments
about dissimiliarities and exemptions are more appropriately
addressed after "it is known who the class will consist of and .
. . some of the factual issues can be fleshed out in discovery."
 *Jirak*, 566 F. Supp. 2d at 850.  If necessary, the class "can be
narrowed to include only certain [loan officers] if not all are
similarly situated." *Id.*  And, of course, if discovery shows that
class members do not have similar job requirements and pay, the
case may be "decertified."

     The Plaintiffs have made the minimal showing necessary for
conditional certification and notice to potential class members.
The Plaintiffs will be permitted to send notices to loan officers
who have worked at 1st Metro branches during the preceding three

---

[28] *See also Theissen v. Gen. Elec. Capital Co.*, 267 F.3d 1095,
1102-03 (10th Cir. 2001); *Searson v. Concord Mortgage Corp.*, No.
07-CV-3909, 2009 WL 3063316, at *6 (E.D.N.Y. Sept. 24, 2009);
*Jirak v. Abbott Labs, Inc.*, 566 F. Supp. 2d 845, 850 (N.D. Ill.
2008); *Francis v. A&E Stores, Inc.*, No. 06-1638, 2008 WL 4619858,
at *3 (S.D.N.Y. Oct. 16, 2008); *Crawford v. Lexington-Fayette
Urban County Gov.*, No. 06-299, 2007 WL 293865, at *7 (E.D. Ky.
Jan. 26, 2007); *White v. MPW Industrial Servs., Inc.*, 236 F.R.D.
363, 372-73 (E.D. Tenn. 2006); *Clarke v. Convergys Customer Mgmt.
Group, Inc.*, 370 F. Supp. 2d 601, 607 (S.D. Tex. 2005).

years.  The collective action will be conditionally certified,
and 1st Metro will be required to provide the Plaintiffs with the
names and last-known addresses of potential class members.

     B.   The Notice

     "Once a collective action is conditionally approved, 'the
court has managerial responsibility to oversee the joinder of
additional parties to assure the task is accomplished in an
efficient and proper way.'"  *Jirak*, 566 F. Supp. 2d at 850
(*quoting Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170-71
(1989).  This responsibility consists of managing the notifi-
cation of potential class members.  *Id.*  1st Metro has objected
to the Plaintiffs' proposed notice, and requested that the
parties be ordered to confer about the notice and length of the
"opt-in" period.  The Court will be order the parties to attempt
to draft an acceptable notice and notification plan.  The plan
should include the dates by which: (1) 1st Metro will produce the
names and addresses of potential collective action members, (2)
notices will be mailed, and (3) consent forms of opt-ins must be
filed with Court.  The plan should include safeguards for the
privacy of potential class members, such as a requirement that
notices be mailed by a neutral third-party administrator.  The
costs of the notice plan shall be borne by the parties; the
Plaintiffs may seek reimbursement should they prevail in this
suit.  *See Montoya* v. *Contractors, Inc.*, No. CCB-07-455, 2008 WL

554114, at *4 (D. Md. Feb. 26, 2008).

III. Conclusion

For the reasons stated above, the Plaintiffs' motion for conditional certification and court-supervised notice will be granted, and 1st Metro's motion to strike will be granted in part and denied in part.


November 18, 2009                        _____/s/_____
Date                                     William D. Quarles, Jr.
                                         United States District Judge

16