IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

GAMAAL ROBINSON, *et al.*,         *

    Plaintiffs,            *

       v.                *

                        *     CIVIL NO.: WDQ-09-1603
EMPIRE EQUITY GROUP , INC.,
*et al.*,                 *

    Defendants.         *

*   *   *   *   *   *   *   *   *   *   *   *   *

MEMORANDUM OPINION

On June 18, 2009, Gamaal Robinson and others filed a class action against Empire Equity Group, Inc. ("Empire Equity") for violations of the Fair Labor Standards Act ("FLSA") and other laws. On January 14, 2011, the Court approved a settlement between the parties. When the settlement was not paid, the Plaintiffs filed a Third Amended Complaint reinstating the litigation. The Plaintiffs added 15 defendants to their Third Amended Complaint, including Daniel Jacobs, Rick Pallo and Ezra Beyman. Pending are motions for summary judgment by Jacobs, Pallo, and Beyman. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the following reasons, Jacobs and Pallo's motion will be granted in part and denied in part, and Beyman's motion will be granted in part and denied in part.

I.  Background[1]

  A. Original Litigation

     1st Metropolitan Mortgage ("1st Metropolitan") is a North

Carolina Corporation that provides residential real estate

mortgages.  ECF No. 109 ¶¶ 15, 61.  In 2002, 1st Metropolitan was

acquired by Empire Equity.[2]  ECF No. 183-1 at 3.  From before the

acquisition of 1st Metropolitan until January 2008, Ezra Beyman

was the sole owner and president of Empire Equity.  *See* ECF Nos.

181-3 at 3-5.  In late 2004 to early 2005, the Ohio Department of

Commerce investigated 1st Metropolitan for possible state law

wage and hour violations.  *Id*. at 7.  The agency determined that

no violations had occurred and that 1st Metropolitan properly

classified its employees.  *Id*.  In January 2008, Beyman sold his

interest in Empire Equity to Corporate Office Management

Providers, Inc. ("Management Providers").  *Id*. at 4.  On May 1,

2009, Brightgreen Home Loans ("Brightgreen") acquired Empire

---

[1] The facts are taken from the third amended complaint, ECF No.
109; Jacobs and Pallo's motion, ECF No. 183-1; Beyman's motion,
ECF No. 184-1; the Plaintiffs' opposition, ECF No. 188; Jacobs
and Pallo's reply, ECF No. 191; Beyman's reply, ECF No. 190; and
their supporting exhibits.  In reviewing a motion for summary
judgment, the nonmovant's evidence "is to be believed, and all
justifiable inferences are to be drawn in [its] favor."  *Anderson
v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[2] Before 2008, 1st Metropolitan had 261 branch offices in 43
states and the District of Columbia.  ECF No. 183-1 at 3.

Equity.[3]  *Id.*  Brightgreen was owned by Hestia Financial ("Hestia").  *Id.*

On June 18, 2009, Gamaal Robinson, Sean Reynolds, Lawrence Silver, Lisa M. Puerini, and Sean Spies filed a class action against Empire Equity and 1st Metropolitan alleging violations of the Fair Labor Standards Act ("FLSA") and Maryland wage and hour laws[4].  ECF No. 1.  The complaint alleged that Empire Equity and 1st Metropolitan failed to pay their employees the minimum wage, failed to pay for overtime, and "unilaterally ceas[ed] to compensate or reduc[ed] compensation without notice" for work that had been completed.  *See* ECF No. 109 ¶ 33.

On July 14, 2009, the named Plaintiffs moved for conditional certification of the class.  ECF No. 7.  On November 18, 2009, the Court conditionally approved class certification for the FLSA claims[5] and approved notice.  ECF Nos. 37-38.  The Court never

---

[3] In 2010, Brightgreen began moving 1st Metropolitan employees to Brightgreen.  ECF No. 183-1 at 5.

[4] Although the Plaintiffs state that they are suing the Defendants for violations of Maryland state and wage laws, they have not specified which state laws are the basis of their claims.  *See* ECF No. 109 ¶1.  In the complaint, the Plaintiffs also assert that they are suing as a Rule 23 class action for violations of state wage and hour laws of 43 states and the District of Columbia.  *Id.* ¶¶ 35-36.

[5] The Plaintiffs described the FLSA class as "all Loan Officers throughout the United States who were employed by Defendants at any time within three years prior to the commencement of this action, and who did not receive minimum wage, as defined by the FLSA, for each hour worked and/or did not receive overtime pay,

certified a Rule 23 class for state law claims. *See id.* After notice, 371 former 1st Metropolitan employees opted into the class. *See* ECF No. 183-1 at 2. The class consists of loan officers, loan processors, and bank managers who were employed by 1st Metropolitan from September 2001 to April 2009. *Id.* ¶¶ 69-73.

On January 25, 2010, the Plaintiffs filed their first amended complaint. ECF No. 56. The Plaintiffs began negotiations with Empire Equity, 1st Metropolitan, and Hestia. ECF No. 183-1 at 2. The CEO of Hestia, Patrick McGeeney, negotiated for the Defendants. *See id.* On September 1, 2010, the Plaintiffs filed a consent motion to file their second amended complaint,[6] and the parties filed a joint motion for settlement approval.[7] As part of the settlement agreement, Empire Equity, or Hestia, agreed to pay $2,700,000. ECF No. 87-4 at 7. In exchange, the Plaintiffs waived all claims against the Defendants and their employees. *Id.* at 6. On January 14, 2011, the Court approved the settlement agreement and closed the case. ECF No. 97. The Defendants never paid the settlement amount. ECF No. 183-1 at 2.

---

as defined by the FLSA, for each hour worked in excess of 40 hours in any work week." ECF No. 109 ¶ 13(a).

[6] ECF No. 88.

[7] ECF No. 87.

On May 13, 2011, counsel for Empire Equity filed a motion to
withdraw their appearance.  ECF No. 100.  On May 27, 2011, the
Plaintiffs moved to reopen the case and to vacate the Court's
judgment approving the settlement agreement.  ECF No. 101.  On
July 23, 2011, the Court granted both motions and directed the
Plaintiffs to file a motion for leave to file a third amended
complaint.  ECF No. 104.  On July 29, 2011, the Plaintiffs filed
a motion to amend their complaint.  ECF No. 105.  On August 23,
2011, the Court approved the motion, and the Plaintiffs' third
amended complaint was filed.  ECF Nos. 108-09.

B. Re-filing and Adding Defendants

In the third amended complaint, in addition to restating
their claims against 1st Metropolitan and Empire Equity, the
Plaintiffs added Hestia as a defendant.  ECF No. 109.  The
Plaintiffs also named 15 individual defendants, arguing that
these individuals were "employers" under the FLSA and state wage
and hour laws.  *Id*.  Beyman, Jacobs, and Pallo were named as
defendants in the third amended complaint.  *Id*. at ¶¶ 25-26, 32.
None of them was a defendant in the original action.[8]  *See* ECF
Nos. 1; 56; 88.

---

[8] Beyman was named in the original complaint as an "employer"
under the FLSA, but not as a defendant.  *See* ECF No. 1 ¶ 22.
Beyman was not listed as an "employer" and was not a defendant in
the first or second amended complaints.  *See* ECF Nos. 56; 88.

a. Ezra Beyman's and Daniel Jacobs's Role in 1st
   Metropolitan[9]

Beyman was the sole owner and the president of Empire Equity until January 2008, when he sold his interest to Management Providers. ECF No. 183-1 at 3-4. In 2000, Beyman hired Jacobs as branch manager for Empire in Charlotte, North Carolina.[10] ECF No. 181-3 at 4. Four months later, Jacobs was promoted to regional manager for Empire Equity. Id. In 2002, Jacobs became the National Sales Manager. Id. After Empire Equity acquired 1st Metropolitan, Jacobs became the Division Chief Operating Officer. Id. Until January 2008, Jacobs reported directly to Beyman. Id.

Beyman and Jacobs dispute who was in charge of 1st Metropolitan after it was acquired by Empire Equity. Beyman maintains that he was "not involved in day-to-day operation or its human resources matters." ECF No. 184-1 at 4. According to Beyman, he gave Jacobs almost complete autonomy,[11] and Jacobs

---

[9] In deposition testimony, there is a dispute between Jacobs and Beyman about who had what responsibilities. Because their accounts are interwoven and contradictory, the Court will collectively describe their roles in 1st Metropolitan.

[10] Beyman admits that he hired Jacobs, but disputes that he regularly hired employees. See Beyman Dep. 46:1-46:25. He does admit that he would give the final "yay or nay" on some hires and that he was consulted about hiring "high level, highly compensated individuals." See id. 46:1-46:25, 67: 9-17.

[11] Jacobs had full autonomy unless he wanted to hire someone with a "huge salary" in a "high level position." Beyman Dep. 67:5-13.

rarely asked Beyman for help. *See* Beyman Dep. 67:5-13, 83:10-84:7. Jacobs ran 1st Metropolitan "from A to Z." *Id*. at 54: 6-11. Jacobs and Beyman would have general conversations about overhead and the number of branches, but nothing "nitty-gritty." *Id*. at 83:10-84:7. Jacobs had the authority to set and change pay rates.[12] *Id*. at 54: 12-18. Jacobs and the human resources department were responsible for compliance with the FLSA. *Id*. at 54.

Jacobs asserts that he reported to Beyman, and Beyman had the ultimate say in many decisions. *See* ECF No. 183-1 at 4, 15 ("Discovery revealed a corporate structure whereby critical operational and strategic decisions were made [by] [] Beyman and his advisors . . . ."); Jacobs Dep. 70:22-72:13. Jacobs's main contact was Ben Freed, Beyman's advisor. Jacobs Dep. 70:22-72:13. Freed was "highly involved" and would tell Jacobs "anything Beyman wanted to relay . . . ."[13] *Id*. Freed would discuss with Jacobs whether 1st Metropolitan would "continue to call [] people statutory employees, . . . [whether or not they were] going to put everyone on minimum wage," and what

---

[12] Beyman admitted that he had the authority to adjust pay rates as well, but asserts that he did not exercise the authority. *See* Beyman Dep. 54: 12-18.

[13] Jacobs believed that Freed's messages were coming directly from Beyman. *See* Jacobs Dep. 72: 9-13.

"exemption[s] [they would use] for outside sales people . . . ."
*Id.* at 71: 22-23.  Jacobs asserts that compliance with the FLSA
was solely the responsibility of human resources.  *See id.* 43:19-
45:7.  However, Jacobs admits that he met with human resources
and attorneys to discuss wage and hour issues when the Ohio
Department of Commerce investigated the company.  *See id.*  Jacobs
and Beyman assert that they had no knowledge of any violations of
the FLSA,[14] they were not involved in hiring or firing loan
officers or bank managers, and bank managers had autonomy in
determining how loan officers were paid and how a branch was
run.[15]

  In January 2008, after Beyman sold his interest, Jacobs
became president of Empire Equity.  ECF No. 183-1 at 4.  Jacobs
had an ownership interest in Management Providers.[16]  ECF No.
1843-1 at 18.  As president, Jacobs was only responsible to the

---

[14] *See* Jacobs Dep. 134: 8-11; Beyman Dep. 113: 5-8.

[15] *See* Jacobs Dep. 27:24-28:3; Beyman Dep. 62: 1-3.

[16] The Plaintiffs assert that Jacobs was the owner of Management
Providers, and, thus, became the owner of Empire Equity.  *See* ECF
No. 188 at 2.  Jacobs admits having an ownership interest in
Management Providers, but states that he was never an owner of
Empire Equity.  ECF No. 183-1 at 18.  Although the Plaintiffs
cite Jacobs's Deposition, Jacobs only discussed Management
Partners' interest in Empire Equity; his level of ownership in
Management Partners is not clarified.  Jacobs Dep. 21: 3-25.  The
Plaintiffs' counsel questioned Beyman about how Management
Providers was owned, but Beyman was not sure.  Beyman Dep. 96: 3-
7.

owner.   Jacobs Dep. 21: 3-25.   He hired a new head of human resources,[17] but asserts that bank managers continued to have authority over loan officers.[18]   On August 17, 2009, Jacobs's employment with 1st Metropolitan and Empire Equity ended.[19]   ECF No. 183-1 at 5.

b. Rick Pallo's Role in 1st Metropolitan

In July 2002, Pallo began working for 1st Metropolitan as comptroller.   Pallo Dep. 9:7-10, 10: 1-5.   In November 2002, Pallo's title changed to Chief Financial Officer.[20]   *Id.* at 11-5. Pallo was "the numbers guy."   Beyman Dep. 49: 9-11.   He oversaw the accounting department from "the Charlotte, North Carolina office of 1st Metropolitan and had virtually no interaction with the loan officers located in branch offices throughout the United States."   *See* ECF Nos. 183-1 at 11; 188 at 7.   The accounting department maintained the time sheets and records of 1st

---

[17] *See* Jacobs Dep. 61: 8-16.

[18] *See* ECF No. 183-1 at 16-17.

[19] The Plaintiffs state that Jacobs was involved in the settlement negotiations in the original litigation.   ECF No. 188 at 20. However, the negotiations occurred a year after Jacobs's employment ended, and the Plaintiffs cite no support for their assertion.   *See id.*; ECF No. 191 at 7.

[20] In addition to his responsibilities as CFO, Pallo also became 1st Metropolitan's National Business Development Manager.   ECF No. 183-1 at 5.

Metropolitan employees,[21] but Pallo did not personally create the records which were completed by branch managers.[22]

Pallo would "recommend branch managers for hire that fit with [1st Metropolitan's] model and parameters . . . ."  Pallo Dep. 63:22-64:5.  Pallo recommended candidates to a committee which made the final hiring decision.  *See id*. at 63:22-64:5; ECF No. 188 at 7.  Pallo did not have authority to "hire, fire, or discipline" loan officers.[23]  ECF No. 183-1 11; *see* Pallo Dep. 63:8-64:5.

At all times that Pallo was working for 1st Metropolitan, he was a salaried employee.  *See* ECF No. 183-1 at 14-15.  In January 2010, Pallo transferred to Brightgreen.  *Id*. at 5.  In February 2011, Pallo left Brightgreen.  *Id*.

On February 1, 2013, Jacobs and Pallo filed a motion for summary judgment.  ECF No. 183.  Beyman also filed a motion for summary judgment.  ECF No. 184.  On March 5, 2013, the Plaintiffs opposed both motions.  ECF No. 188.  On March 22, 2013, Beyman and Jacobs and Pallo replied.  ECF Nos. 190-91.

---

[21] *See* Pallo Dep. 63:22--64:5; 65:17-69:3; ECF No. 188 at 7.

[22] *See* Pallo Dep. 63:22--64:5; 65:17-69:3; ECF No. 188 at 7. Further, no one in Pallo's Department could alter or set pay rates.  *See* Pallo Dep. 68:18-69:3.

[23] The Plaintiffs argue that as CFO Pallo "hired subordinates," but never maintain that he hired loan officers.  *See* ECF No. 188 at 7.

II. Analysis

  A. Legal Standard

    1. Summary Judgment

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[24] In considering the motion, the judge's function is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in [her] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

---

[24] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

B. Statute of Limitations

Jacobs, Pallo, and Beyman argue that they are entitled to summary judgment because the Plaintiffs' claims are barred by the statute of limitations. ECF Nos. 183-1 at 6; 184-1 at 1-2. The Plaintiffs assert that the FLSA's three-year statute of limitations applies, and they are entitled to equitable tolling. ECF No. 188 at 18-19.

The FLSA's statute of limitations has two-tiers. *See* 29 U.S.C. § 255(a). For ordinary violations there is a two-year statute of limitations. *See* 29 U.S.C. § 255(a); *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 357 (4th Cir. 2011). When the violation is "willful," there is a three-year statute of limitations. *Desmond,* 630 F.3d at 357. "This two-tier system 'makes it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations.'" *Hantz v. Prospect Mortg., LLC*, No. 1:13cv1435(JCC/TRJ), 2014 WL 463019, at *3 (E.D. Va. Feb. 5, 2014) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988)).

A violation is willful if the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited . . . ." *Richland Shoe Co.*, 486 U.S. at 133. "If an employer acts unreasonably, but not recklessly, in determining its legal obligation" it is not considered willful. *Id.* at 135. "Mere negligence on the part of the employer with regard to

compliance with the FLSA is not sufficient to prove willfulness."
*Gionfriddo v. Jason Zink, LLC,* 769 F.Supp.2d 880, 890 (D.Md.
2011) (internal citation omitted).

The employee bears the burden of proof when alleging that a
violation is willful. *See Desmond,* 630 F.3d at 358.  "Although
this is ultimately a question of fact, a plaintiff must present
sufficient evidence of willfulness to survive summary judgment."
*Hantz*, 2014 WL 463019, at *3 (citing *Pignataro v. Port Authority*,
593 F.3d 265, 273 (3d Cir. 2010)).

In this case, the Plaintiffs moved for leave to file a third
amended complaint on July 29, 2011.  ECF No. 105.  Thus, under
the ordinary statute of limitations, the Plaintiffs would only be
able to assert violations of the FLSA that occurred on or after
July 29, 2009.[25]  *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 986-
87 (4th Cir. 1992).  In the third amended complaint, the
Plaintiffs pled willful violations of the FLSA.  ECF No. 109 ¶

---

[25] The Plaintiffs do not present any argument that the allegations
against Jacobs, Pallo, and Beyman in the third amended complaint
relate back to the original complaint.  *See* ECF No. 188; *see also*
*Goodman v. Praxair, Inc.*, 494 F.3d 458, 467 (4th Cir. 2007)
("[A]n amendment that changes the party against whom a claim is
asserted relates back to the date of the original pleading if (1)
the claim in the amended complaint arose out of the same
transaction that formed the basis of the claim in the original
complaint; (2) the party to be brought in by the amendment
received notice of the action such that it will not be prejudiced
in maintaining a defense to the claim; and (3) it should have
known that it would have originally been named a defendant but
for a mistake concerning the identity of the proper party.")
(internal quotations omitted).

33.   However, other than conclusionary statements of
willfulness,[26] the Plaintiffs do not cite any evidence that
Jacobs, Pallo, or Beyman "ignored specific warnings that they
were out of compliance, destroyed or withheld records to block
investigations into their employment practices, or split
employees' hours between two companies' books to conceal their
overtime work."   *Hantz*, 2014 WL 463019, at *3 (summarizing
willfulness cases).

The Plaintiffs argue that "the record reflects willful
violations of the FLSA as [the] Defendants can point to no
specific policies or practices . . . that would ensure FLSA
compliance."[27]   ECF No. 188 at 18.   Additionally, the Plaintiffs
accuse Jacobs, Pallo, and Beyman of "burying [their] head[s] in
the sand."   *Id.* at 19.   The Plaintiffs' conclusionary statements
and attempts to shift the burden to the Defendants do not create
a material issue of fact about willfulness.   *See Desmond,* 630
F.3d at 358 (the employee bears the burden of showing
willfulness); *Hantz*, 2014 WL 463019, at *3 (the plaintiff must
present sufficient evidence of willfulness to survive summary
judgment).   Accordingly, the ordinary two-year statute of
limitations applies to the Plaintiffs' claims.

---

[26] *See, e.g.*, ECF No. 188 at 18.

[27] In his deposition, Jacobs discusses policies intended to ensure
compliance.   *See* Jacobs Dep. 113:19-114:3.

The Plaintiffs also assert that the Court should equitably toll the statute of limitations for the time when the settlement agreement was in effect. ECF No. 188 at 19-20. The Plaintiffs argue that the settlement negotiations were a "scheme" by Empire Equity and Hestia to allow the statute of limitations to run. *Id*. at 20. Because the Plaintiffs "universally released" their claims in the settlement agreement, they were barred from asserting their rights until the Court vacated the judgment on July 23, 2011. *Id*.

Equitable tolling is appropriate when "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Harris v. Hutchinson,* 209 F.3d 325, 330 (4th Cir.2000) (quoting *Alvarez-Machain v. United States,*107 F.3d 696, 700 (9th Cir.1996)). "The circumstances under which equitable tolling has been permitted are therefore quite narrow." *Chao v. Va. Dept. of Transp.,* 291 F.3d 276, 283 (4th Cir. 2002). "[A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Id.; see also Spencer v. Sutton,* 239 F.3d 626, 629 (4th Cir.2001). Equitable tolling is inappropriate, "where the claimant failed to exercise due diligence in preserving his legal rights." *Irwin v. Dept. of Veterans,* 498 U.S. 89, 96 (1990).

Because of the settlement agreement, the Plaintiffs could not have asserted their claims from when the Court approved the settlement agreement, to when the Court vacated the judgment.[28] Thus, the Court will exercise its equitable authority to toll the statute of limitations after the Court approved the settlement agreement. *Cf. Ruffin v. Enter. Of the E. Panhandle*, No. 3:11-CV-19, 2012 WL 28192, at *2 (N.D. W. Va. Jan. 5, 2012); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-0715 SC, 2007 WL 707475, at *8 (N.D. Cal. Mar. 6, 2007). Accordingly, the statute of limitations will bar any claim by the Plaintiffs that accrued before January 14, 2009. Any claims that accrued before this date will be dismissed.[29]

C. Employer-Employee Relationship

Jacobs and Pallo argue that they are entitled to summary judgment because they are not "employers" under the FLSA. ECF No. 183-1 at 9. The Plaintiffs assert that the "economic

---

[28] Although they argue that equitable tolling is inappropriate, Jacobs and Pallo appear to agree that the Plaintiffs were stopped from asserting their claims by the settlement agreement. *See* ECF No. 191 at 8 ("[The] Plaintiffs could have asserted their claims anytime prior to January 14, 2011 when the settlement agreement . . . was finalized and approved.")

[29] Beyman sold his interest in Empire Equity in January 2008. ECF No. 183-1 at 3-4. The Plaintiffs have not alleged any actions taken by Beyman after this date that violated the FLSA. *See* ECF No. 188. Accordingly, all claims against Beyman must be dismissed.
    The Court stresses that this statute of limitations analysis is limited to Jacobs, Pallo, and Beyman.

realities" show that Jacobs and Pallo were employers.   ECF No.
188 at 2.

The FLSA was enacted to protect "the rights of those who
toil, of those who sacrifice a full measure of their freedom and
talents to the use and profit of others."   *Benshoff v. City of
Virginia Beach,* 180 F.3d 136, 140 (4th Cir. 1999) (*quoting Tenn.
Coal. Iron & R.R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 597
(1944)).   The Act mandates that employers pay a minimum wage to
covered employees and pay overtime for each hour worked in excess
of 40 per work week.   29 U.S.C. §§ 206 (a)(1), 207 (a)(1).   It is
"remedial and humanitarian in purpose" and "should be broadly
interpreted and applied to effectuate its goals."   *Benshoff*, 180
F.3d at 140 (internal citation and quotation marks omitted); *see
also Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 890 (D.
Md. 2011).

To sustain a FLSA claim, the plaintiffs must allege facts
sufficient to establish the existence of an employer-employee
relationship.   *See id.*   The FLSA defines "employer" as "any
person acting directly or indirectly in the interest of an
employer in relation to an employee."   29 U.S.C. § 203 (d).   "The
Supreme Court has instructed courts to construe the terms
'employer' and 'employee' expansively under the FLSA."   *Quinteros
v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 768 (D. Md.
2006).

Courts examine the "economic realities" to determine if an employer-employee relationship exists. *See Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006). Courts will consider a person's (1) authority to hire and fire employees, (2) authority to supervise and control work schedules or employment conditions, (3) authority to determine the rate and method of payment, and (4) the maintenance of employment records. *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983). Courts will also examine "the person's job description, his or her financial interest in the enterprise, and whether or not the individual exercises control over the employment relationship." *Gionfriddo*, 769 F. Supp. 2d at 890 (citing *Baystate Alternative Staffing v. Herman*, 163 F.3d 668, 675 (1st Cir.1998)). No single factor is determinative, and the determination that an employment relationship exists "does not depend on . . . isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, (1947); *see also Speert v. Proficio Mortg. Ventures, LLC*, No. JKB-10-718, 2011 WL 2417133, at *3 (D. Md. June 11, 2011) (court should consider the totality of the circumstances).

1. Jacobs and Beyman

Examining the record and considering the totality of the circumstances, there is a material factual dispute about whether Jacobs was an "employer" under the FLSA.  Jacobs asserts that he was merely a salaried employee of 1st Metropolitan, and decisions were in the hands of Beyman.  *See* ECF No. 183-1 at 15-18.

"[A]n individual defendant's status as a high-level corporate shareholder or officer does not necessarily impart 'employer' liability to that individual."  *Iraheta v. Lam Yuen, LLC*, No. DKC 12-1426, 2012 U.S. Dist. LEXIS 169901, at *10-11 (D. Md. Nov. 29, 2012).  Here, the Plaintiffs have cited more than "mere stock ownership" to establish Beyman's employer status. *See Caseres v. S & R Mgmt. Co.*, No. 12-cv-01358-AW, 2012 U.S. Dist. LEXIS 152724, at *14 (D. Md. Oct. 24, 2012); *Alvarez v. Downtown Food Enters., Inc.*, No. 10 C 4509, 2010 U.S. Dist. LEXIS 131966, at *6 (N.D Ill. Dec. 13, 2010) ("[M]ere stock ownership and officer status, without more factual evidence of her involvement in the daily operations . . . are insufficient to hold her individually liable.").

According to Jacobs and Pallo, "[d]iscovery revealed a corporate structure whereby critical operational and strategic decisions were made [by] [] Beyman and his advisors . . . ."  ECF No. 183-1 at 4, 15.  Jacobs stated that Beyman's advisor would check in with Jacobs and would relay Beyman's messages about

running 1st Metropolitan.  Jacobs Dep. 70:22-72:13.  Beyman was involved in decisions including how employees were classified for wage purposes and which exemptions the company would use.  *Id.* at 71: 22-23.  Further, Beyman admitted that he would give the ultimate "yay or nay" on many hiring decisions.  Beyman Dep. 46:1-46:25, 67:5-17.

Beyman asserts that Jacobs was in control of the day-to-day decisions of 1st Metropolitan and ran 1st Metropolitan "from A to Z."  *Id.* at 54: 6-11.  According to Beyman, Jacobs had the authority to set and change pay rates,[30] and Jacobs and the human resources department were responsible for FLSA compliance.  *Id.* at 54.

Given the conflicting factual allegations, summary judgment is inappropriate on this issue.  *See Chapman v. Ourisman Chevrolet Co.*, No. AW-08-2545, 2011 U.S. Dist. LEXIS 73708, at *35 (D. Md. July 1, 2011).

2. Pallo

There are insufficient facts for a reasonable jury to find that Pallo was an "employer" under the FLSA.  Pallo ran the accounting department at 1st Metropolitan and was "the numbers guy."  Beyman Dep. 49: 9-11.  Although his department stored

---

[30] Beyman admitted that he had the authority to adjust pay rates, but asserts that he did not exercise the authority.  *See* Beyman Dep. 54: 12-18.

employee records and time sheets, there are no facts showing that Pallo prepared time sheets. *See* Pallo Dep. 63:22--64:5; 65:17-69:3; ECF No. 188 at 7. Pallo did not have ultimate hiring authority over bank managers or loan officers.[31] *See Speert*, 2011 WL 2417133, at *4 (individual was not an employer when he could only recommend hiring and termination of employees, but could not make the final decision).

Plaintiffs' general allegations and Pallo's position as CFO of 1st Metropolitan are insufficient to sustain this action against him. *See Caseres*, 2012 U.S. Dist. LEXIS 152724, at *14. Accordingly, the Court will grant Pallo's motion for summary judgment.

D. State Law Claims

Beyman construed the Plaintiffs' state law claims as claims based in Maryland law. ECF No. 184-1 at 1, n.1, 11. Accordingly, he argues that he is not an "employer" under Maryland law. *Id.* Jacobs and Pallo assert that they are entitled to summary judgment on the state law claims because "the Plaintiffs have only pursued their claims under the FLSA" and never sought certification of a Rule 23 class. ECF No. 183-1 at 18. The Plaintiffs failed to respond to any of these arguments

---

[31] The Plaintiffs argue that Pallo "hired subordinates." *See* ECF No. 188 at 7. However, hiring individuals in his department does not make him an "employer" of persons outside his department.

in their opposition, only discussing the FLSA claims.   ECF No. 188.

"Federal courts may only adjudicate the rights of putative class members upon certification of that class under Federal Rule of Civil Procedure 23." *Partington v. Amer. Inter. Specialty Line Ins. Co.*, 443 F.3d 334, 340 (4th Cir. 2006).  "Certification is contingent upon the trial court's satisfaction 'after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Id.* (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).  "Compliance with Rule 23 must be actual, not presumed." *Id.* (internal citations and quotations omitted).

This Court has not certified a Rule 23 class for state law claims.  *See* ECF Nos. 37-38.  Therefore, the Court will construe these claims as the opening of the third amended complaint states, as claims under "Maryland state and wage laws."[32]  *See* ECF

---

[32] Additionally, "although the Fourth Circuit has not directly examined whether plaintiffs seeking class certification can simultaneously avail themselves of a class action under Rule 23 and FLSA § 16(b), sister circuits and district courts in this circuit have followed the holding in *LaChappelle v. Owens-Illinois, Inc.*, 513 F.2d 286 (5th Cir. 1975), which held that there is a fundamentally irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 16(b).  The *LaChappelle* Court noted that Rule 23 (c) provides for "opt out" class action while FLSA § 16(b) allows as class members only those who "opt in." These two types of class actions are mutually exclusive and irreconcilable." *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 562 (E.D. Va. 2006); *see also*

No. 109 ¶1.   Maryland's equivalents to the FLSA are the Maryland
Wage and Hour Law ("MWHL")[33] and the Maryland Wage Payment and
Collection Law ("MWPCL").[34]

Whether an individual is an employer under the MWHL is
assessed under the FLSA economic realities test.  *Iraheta*, 2012
U.S. Dist. LEXIS 169901, at *11.  Accordingly, based on the
Court's prior analysis, Pallo's motion for summary judgment will
be granted because he is not an "employer," and summary judgment
will be denied for Jacobs.  Additionally, the Court will also
deny Beyman's motion for summary judgment on the MWHL claims.
The factual dispute that mandates the denial of Jacob's motion
also requires the Court to deny Beyman's motion.[35]

Under the MWPCL, the definition of employer "is more
restrictive" because "it does not expand employer liability to
those acting on behalf of the employer."  *Id*.  Thus, the term
"employer" "contemplates some sort of contractual relationship
involving the payment of wages in exchange for services.'"
*Caseres*, 2012 U.S. Dist. LEXIS 152724, at *11.  "Employer" does

---

*LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12-cv-00363, 2013 U.S.
Dist. LEXIS 5352, at *12-13 (E.D. Va. Jan. 11, 2013).

[33] MD Code Ann., Labor & Empl. §§ 3-401 et seq.

[34] MD Code Ann., Labor & Empl. §§ 3-501 et seq.

[35] *See supra* Part II.C.1 (detailing the factual dispute between
Jacobs and Beyman about who made the ultimate decisions at 1st
Metropolitan).

not include supervisors, officers, or other agents who act on behalf of a corporate employer. *See* Watkins v. Brown, 173 F.Supp.2d 409, 416 (D. Md. 2011). Accordingly, Jacobs and Pallo, are not "employers" under the MWPCL, and the Court will grant summary judgment on these claims.

III. Conclusion

For the reasons stated above, Jacobs and Pallo's motion for summary judgment will be granted in part and denied in part. Beyman's motion for summary judgment will be granted in part and denied in part.

11/24/14
_____
Date

_____
William D. Quarles, Jr.
United States District Judge

24